Our next case this morning is number 21-10230, Blackshire v. United States. Ms. Moretti. Good morning, and may it please the Court, Michelle Moretti for Appellant Lawrence Blackshire. I would like to reserve two minutes with the Court's assistance, and I would like to spend my brief time today primarily addressing the first two issues presented in the brief, unless the Court has additional questions, which, of course, I'd be happy to answer. Mr. Blackshire was ultimately sentenced to 96 months for an assault, which was aggravated, considered aggravated, based on a missing victim's testimony, or not testimony, but her statements that were permitted through the forfeiture by wrongdoing doctrine. Mr. Blackshire's rights to confront his witness were violated, and the evidence was not harmless to his case. Why was the district judge, and I think we apply a preponderance of the evidence standard, why was the district judge incorrect in finding that Mr. Blackshire had intentionally procured the absence of the victim from trial? For such an extreme remedy, forfeiture by wrongdoing is an exception to the confrontation doctrine, intent, causation, and actual wrongful conduct must be shown. In this case, the assault were conducted immediately after the assault, and then for an entire year after, the victim was never contacted until the federal indictment issued in August of 2019, and only at that point did Detective Owens attempt to contact the victim, although it's statistically foreseeable that domestic violence victims would ever – I don't understand the relevance of any of that. I mean, the question is the wrongdoing by the defendant, and as I understand your brief, your argument is – there certainly was intent. We know he didn't want her to testify. But the question is, was there any was make sure that she was either persuade him herself or have other people persuade her, which appears happened, not to testify. I gather your position is that that does not support forfeiture by wrongdoing because there wasn't wrongdoing. Your Honor, I would respectfully suggest that Mr. Blackshire – I agree that he certainly, like witnesses, do not – or defendants do not want witnesses to testify, and that's a run-of-the-mill scenario. But you did more than the desire here. We have these taped recordings where he said we already discussed this about her not showing up. Don't worry, there will be no testimony here. So let's assume that's enough for the judge to conclude that he was involved in her absence and helped procure it. I think what Judge Berzon's asking may be – but something I was trying to ask, so she was trying – is that sufficient wrongdoing to invoke the forfeiture doctrine, or do you need something more? Under the circumstances, that would not be sufficient wrongdoing. Tell me what case you were on. First – It was – What case? What do you mean by – I wonder why you're hedging. What do you mean by – there's an answer. If somebody calls up someone and says, you know, you really – you don't have to testify and I really don't want you to testify, please don't testify, and suppose he does it five times, we don't know that he did. But is that sufficient for forfeiture by wrongdoing? If that is the extent that the defendant is badgering the potential witness, that could rise to the level of wrongful persuasion. In this case, somewhere before his initial trial or arrest on the tribal charges, it appears that he had some sort of conversation with the victim and others that may have been involved, and they simply discussed making peace. I made peace with the – Okay. So let's assume that's all true. Yes. I'm still interested in directly addressing Judge Berzon's question. Let's assume that what Mr. Blackshire did was call up the victim and say, let's let bygones be bygones. When they come to look for you to testify for trial, I want you not to be available. There's plenty of places on the reservation where they won't find you. Don't volunteer and don't be found. And I think the record probably supports a reasonable inference that that's the case. The question is – I know you can fight me on the facts, but don't for a moment – is that sufficient wrongdoing or do you need to threaten her or do – or cause more? Can you get together with a victim and say, let's agree together that you'll be nowhere around when they want to try me? I thought your argument was squarely that that's not enough, but you now seem to be hedging. No, that in and of itself is not enough, and I'm a little bit thrown because I don't see that that – I asked you to assume those facts, but I'm having difficulty with your answer. That's why I want to explore what case you think supports that. In other words, can you really say you have a victim to a crime? What if he – what if you gave her some money? He never threatened her and said, go to a country without an extradition treaty so I can't – so they can't get your testimony. Would you say then he's still entitled to have her confront him at trial? That conduct would rise to the level of wrongful conduct because it implies bribery. And the case law and the rules articulate bribery, intimidation, coercion, undue pressure. Well, but I'm asking because as I read the case law, it seems to suggest that if you are – if you are trying to procure somebody's absence from trial because her presence at trial would hurt you, that's wrongful conduct. And I'm trying to figure out what case you think says I'm wrong on that. I would point to Carlson v. Attorney General where the court made a thorough analysis and distinguished between some active conduct where the defendant was meaningfully engaged in conduct to keep the witness from – Okay, but I was asking you to assume that she was meaningfully engaged. And I thought what your argument is – was from reading your brief is, yeah, maybe there's evidence he was meaningful engaged, meaningful engaged, but that's not enough. You need more. You need a criminal act like bribery. And the advisory committee's notes say you don't. The Supreme Court say all you need is conduct designed to prevent a witness from testifying. So I'm trying to figure out what case you rely on for the notion that, no, no, you need something more than just conduct designed to keep the witness away. Well, the cases that I've cited in the briefs talk – give examples of the type of conduct that has been held to constitute conduct sufficient for forfeiture, which have always included detailed recitations of conduct which is contemporaneous with the event, which is conduct that has been persistent  Ms. Moretti, we're reviewing the district court's finding of a preponderance for clear error, are we not? Yes, yes, correct. And what we're looking for is to meet these standards as a finding that the defendant had the requisite intent to dissuade the witness from testifying. That's the wrongful intent, isn't it? It's not wrongful in and of itself. What isn't wrongful? The Johnson case talks about that the conduct itself has to be wrongful in addition from – As I understand it, it's not just the intent that has to be wrongful. It's the action taken to forward that intent. The actual – There's something more. There's something about the action that has to be wrongful. Yes. The action. Because from Giles on clarified that the forfeiture doctrine is designed to prevent a witness from being intimidated or the defendant from bribing, murdering, extorting You have Carlson. You have Carlson in which somebody says to the children, hide out and don't let anybody find your mother. And so what's the more there? Well, that is the outer limits of the doctrine, as I see it. So why don't you fall inside of it? In that case, the proceedings were already underway. The victim – not the victim, but the witnesses had already been subpoenaed, unlike this case. But isn't the point in Carlson that you were dealing with a child and that he was – he had gone away with the child. Presumably, if he had – was keeping the child, the child can just show up by themselves. But he was somewhere with that child. And with the mother as well. And with the mother. Right? And yes. And the court looked carefully at the timeframe, which occurred on the second day of the trial, I believe. Now, in contrast, in this case, the victim was never located. No – there is no evidence that she was ever actually contacted. The only allusion we have is the vague reference that Mr. Blackshear on December 23rd, 2019, was consulting his distraught girlfriend, saying, oh, I already talked about them. Don't worry. I'm not going to give a life sentence. I made peace with these people. Well, there is a call where he essentially says, if you find her, tell her to stay away. Yes? There was a subsequent conversation on the 12th with the same woman, and she flatly refused. So there was – and there – the government presented no evidence that she was ever – that Ms. Wilson ever contacted CS. So even though – So you're arguing that there was insufficient evidence from which the judge could find causation? I think that's the strongest argument, that there is insufficient evidence of causation, completely considering the timeline of the 16 months between the event and the trial, the complete absence of any contact by the victim or from the victim after August. Oh, no. We don't know that with regard to the defendant. He could have been in contact. Contact by the government. The government – I would point out that Detective Owens worked along with tribal and federal prosecutors and could have and should have foreseen that federal – a federal indictment could issue when these charges had been dismissed. That's on the unavailability prong, right? So you're arguing that there was insufficient evidence that she was unavailable? I mean, she was clearly unavailable, correct? Well, but that – she was clearly unavailable, but the government – So you're arguing that the government has some burden to overcome? Let's assume that there's evidence here that your client intentionally procured her absence. Yes. So you're arguing that the government didn't try hard enough to find her and that's part of the forfeiture doctrine? It was too easy for the government to go through the motions. Yes, the government does have some burden. I thought the evidence of that was that she could have not shown up because she didn't show up. In other words, we don't know where she was. She was never – She could have, you know, been in Timbuktu by then. We know that he said he made peace with her at some earlier time. We also – so at some point he thought he persuaded her not to testify. But we also know that he wasn't very sure of it because he kept calling people to talk to her. And then we don't know whether anybody actually did talk to her at that point. So it could be that she was just gone. It appears to be that she was just gone because nobody appeared to be able to locate her. And the government failed to call the witnesses whom he spoke to. Do you want to very briefly talk about the nurse? I'm sorry, Your Honor? You had another argument about the nurse evidence. Yes. You have one minute to do it, so. Yes, yes, I see. Okay. The district court wrongly admitted the victim's statements to the forensic nurse, Nurse Rappel. In this case, the victim had been treated by the emergency room physician and the radiologist on the day she reported the incident. Ms. Moretti, just to cut to the quick of this point, if the defendant forfeited confrontation by wrongdoing, doesn't that apply to all statements by the victim, regardless of to whom they were made or in what capacity? I don't believe that the government requested that that be the case. Is it correct? I believe no, because the statements were here offered for as an exception to the hearsay rule under 804B meant to be reliable because they were supposedly in anticipation of medical treatment. And Nurse Rappel testified that I was putting together a plan of treatment. Why isn't that enough for the judge to conclude that they fall within the hearsay exception? Well, the court needs to assess the entirety of the circumstances. Well, let's assume that the judge did assess the entirety of the circumstances and concluded that they were offered for treatment. Are you saying that that's clear error? The statements that were elicited really had very little to do with treatment. So you're saying it's clear error? Yes. Even though the nurse said, my purpose in conducting this interview was to come up with a plan of treatment. Yes, because the question is what the victim understood her statements to be. How do we know what the victim understood? She wasn't there. She signed a consent statement saying that these statements would be furnished to government authorities. But we do have case law that says that's not enough to render this not a medical examination. So what the judge has on the one hand is the nurse saying, and on the other hand nothing because the victim is not there. So isn't that enough for the judge to conclude that they're for purposes of treatment? But she was also interviewed at, after medical treatment was provided, she was interviewed at an outpost of the police department. The Scottsdale Advocacy Center is a place for all aspects of the police investigation to unfold. It's designed to facilitate the investigation. Officers, prosecutors, investigators are located in that very building. Nurse Rabl worked from a pre-designed form that was constructed to elicit incriminating evidence about past events that would be foreseeably used at trial against Mr. Blackshire. She did not in fact perform any medical treatment. In fact, at one point she tested. She wouldn't treat injuries unless it was something very minor. Thank you, Ms. Moretti. We'll give you two minutes for rebuttal. Thank you. Mr. Kozinets. Thank you. May it please the court, my name is Peter Kozinets. I represent the United States. The court should affirm for two essential reasons. First, the evidence in the record did support the district court's factual finding that the defendant engaged in forfeiture by wrongdoing, reviewed under a clear error standard. Affirmance is warranted. And secondly, the evidence also shows that the statements that were made to the Honor Health nurse, Nurse Rabl, were statements that served a medical purpose, that resulted in a plan of care, and that addressed a very important issue for this victim, which was the after effects of strangulation. She was still in pain. She was still severely injured when she saw that nurse. What treatment did the nurse provide in her capacity? The nurse conducted a medical examination and then provided treatment in the form of these aftercare instructions regarding the after effects of strangulation. As the nurse testified, when you have symptoms and signs consistent with strangulation, you are at danger for an emergent condition to come out at any time thereafter. And it's very important for the victim to be aware of this and to know that if they experience increased dizziness, headaches, blurred vision, speech problems, and so forth, that's an emergency and they need to go to the ER. The nurse also diagnosed the victim with domestic violence. Is that a medical condition that she was providing treatment for? I guess the concern here is that, to pick up on Ms. Moretti's final argument, is this looks awfully interrogatory, we might say. Well, so first of all, with respect to this Confrontation Clause issue, Your Honor is correct, if forfeiture by wrongdoing applies, that takes care of the Confrontation Clause issue. But forfeiture by wrongdoing applies even to the nurse testimony? Well, to the extent there's a Confrontation Clause issue there, it would. Because the effect of forfeiture by wrongdoing is that... Is that everything comes in, even things that have nothing to do with the wrongdoing? Right, Your Honor, by orchestrating the defendant's absence, the victim's absence... Yes, we're talking about here the victim's statements to the nurse, not... That's correct. The nurse actually showed up and testified about everything else. Right, that's correct, Your Honor. So what you're saying is that the forfeiture doctrine would allow the victim's statements to the nurse to come in. Yes, under... The nurse's other statements were subject to confrontation. Where do you see precedent that provides that, that the Confrontation Clause washes out, that every statement by the victim is washed out if some of the victim's statements are wrongfully precluded? This one wasn't wrongfully precluded. Why is it that there's forfeiture by wrongdoing with regard to the statement to the nurse? Oh, I think I see Your Honor's point. Right, he didn't keep her away from going to the nurse. That's certainly the case. Right. My point is only that to the extent there's a Confrontation Clause objection to admitting the nurse's testimony about what she was told by the victim, describing the assault, to the extent that's subjected to on a Confrontation Clause basis for... The notion being because he kept the victim away. Right, right. From trial. Yes, right, exactly. So... So... Yeah, go ahead. Whether or not it covers both or doesn't cover both, I think the question for me in this case is, I posit to you that there's probably sufficient evidence from which the judge could have concluded that Mr. Blackshire did something to persuade the victim not to show up. Is that enough to give rise to forfeiture? Yes, absolutely it is. So what does the wrongdoing part mean? I thought that there were cases that said just persuading somebody not to come. This is different, I think, than what applies to the obstruction of justice guideline where persuading somebody not to show up seems to be enough. But with regard to the forfeiture by wrongdoing, which is obviously a much more onerous remedy, my understanding was that there was an additional element, which is he had to do something, not just talk to someone. Well, Your Honor, the courts have recognized that these elements are to be construed broadly to effectuate the purpose of the doctrine. And here what we have are repeated efforts by the defendant to keep this victim away. He's putting out this message in multiple ways. He's saying he's already done it. Well, we don't know that any of the later messages ever got there. And we know that he says that he made peace with her earlier on. But the later messages, we have no idea that they ever got there. So there you have a causation problem. So let's, focusing on the earlier ones where he said, I made peace with her, if his representation is essentially, you know, we had a session in which we decided, as one of my colleagues said, let Bicon speak Bicon. So that seems to be what he's saying. Would that be a basis for forfeiture by wrongdoing? In the context of this case, it would be because I think you can't consider those statements, that conversation, in a vacuum. I think the district court was well-justified in looking at the circumstances as a whole. Here, we know that this was not, there wasn't just the sort of friendly relationship between these two people. There was a long history of violence and threats that marked this relationship. And courts have recognized that whether you're applying the obstruction of justice enhancement or you're looking at issues of forfeiture by wrongdoing, you can look at the context of the party's relationship. I'm not arguing. Basically relying on the crime as being the implicit threat. Not, the crime standing alone is not enough. But there is evidence in this record that there were prior incidences of domestic violence, that there were threats that were made. She told, she made one of her statements that every time she wants to leave him, that's when he starts to hit me. And so we have this relationship of control and influence. In the Montague case from the 10th Circuit, the court also looked at this history of domestic violence to infer that there was wrongdoing in the form of control. Now, albeit in that case, there was also a violation of a no-contact order. But it was the wife who was violating the no-contact order. She was coming to the husband. And in order to really reach the result of wrongfulness, the court said we have to look at the history of domestic violence between the parties. Is there a requirement of wrongfulness other than keeping the witness away? I don't think so. I look at, I hate to rely on 1878 cases, but Reynolds is a case in which the defendant just refused to disclose his wife's whereabouts so she could be subpoenaed. And the court said you can't insist on her being there if you voluntarily kept her away. So I'm wondering whether wrongdoing is a misnomer in this context and it's enough just to show that you kept the witness away. Your active efforts kept the witness away. Now, whether or not this record establishes that is the next question I want to get to. But is that enough in your view? Yes, Your Honor. So why do we call it wrongdoing? Is it just wrongdoing to keep witnesses away? There's a statement in the Giles case, 554 U.S. at 365, where Justice Scalia says the wrong that this doctrine prevents is the defendant benefiting from, quote, conduct designed to prevent the witness from testifying. That's the wrongfulness. That's what Reynolds sort of says is you can't insist on your right to confront a witness if you're the one being responsible for her not being there. Exactly. So assume that's enough for a moment. It may not be. So let's go to the sufficiency of the evidence. What evidence establishes causation here? Okay. And there's ample evidence of that here. We have really this first phone call where the defendant essentially makes a confession. He says, I didn't want her to come, essentially, and this is what I did. Government's not ever going to be able to find victims. And make peace with her. What do you mean this is what I did? What did he say he did? Well, he says, I had already taken care of this. He says, I already made peace with everybody. He does say that. And then he says, we already discussed the whole effing not showing up to court thing. He's speaking in past tense. This is something he's already done. He's already persuaded, talked this victim into keeping away from being able to testify at his trial. Unless there be any doubt. He tells his girlfriend to go tell her not to come. So he wasn't so sure. And then he tells me that he calls and talks to his friend and tells her what to tell the woman, what to tell the victim. So he doesn't seem quite convinced that he's actually done this. I would argue that he's taking a belt and suspenders approach. He thinks he's already talked her out of it. But as his trial date gets a lot closer, he does start to get a little nervous. And he wants to make real sure that she's gotten the message. And if you look at the transcript of the third recording, the person who's responding to him when he says make sure she doesn't effing essentially show up to court. She says, I'm pretty sure she's already gone through this. Pretty sure she's been through something like this. This is at ER 131. Pretty sure she already, pretty sure she knows everything. In other words, pretty sure she's already gotten this message. Pretty sure she knows that they can't do anything if she doesn't come. Right. He said, tell her that the government can't do anything if she doesn't come. And she says, I think she knows that. Right. Well, he says, make sure she doesn't effing and then, you know, right, cooperate, show up. Now, this isn't just a friendly conversation or a friendly message being sent out to like a codependent. What case do you have that says that? Let's assume that that's all so that he talked to her and told her not to come. And maybe it hooks up and she doesn't come. What case says that that is enough, that their wrongdoing, there's no other wrongdoing that's required, no threats, no implicit threats or anything else? I understand you say that the background is sufficient, but let's leave that out for now. Okay. Okay. Is it sufficient simply to persuade somebody not to come? That's what we're trying to get you to. Yes. Yes, it is. Tell me a case that says that. Okay. The Dentsa case from the Second Circuit, the Johansson case from the Seventh Circuit, the Hallam case from the Supreme Court of Iowa. These are cases where the courts have recognized that persuasion and influence are things that really are enough to satisfy the requirement. If you are making a request, don't show up to court, to somebody over whom you have a relationship of some sort of control or some sort of influence, that can be sufficient. We cited more of those cases in our answering brief as well. And I think when you combine that with the language from the Supreme Court in the Giles case, that the wrong are these efforts to keep the defendant away from court, you have enough wrongful conduct. I would submit it's not a high burden. It's not a high standard. It just has to be something. And I think we have more than that something here. And lest there be any doubt, if you look at the transcript of that first call, where the person he's talking to kind of chides him for being dumb, for verbalizing all of this on what they likely know is a recorded line, his response is, and pardon the language, fuck the courts. Essentially, I don't care if the judge hears about this. Fuck them. And what that tells us is that he is doing this for the express purpose of frustrating the integrity of the fact-finding process of the court. And that is the exact reason why forfeiture by wrongdoing exists. This is the Supreme Court recognized in Davis v. Washington and Giles v. California. I mean, the record is absolutely clear that he is engaged in this campaign to keep his victim away from his domestic violence trial. And on preponderance of the evidence standard, particularly when reviewing a finding for clear error, I think that there was more than enough here for the judge to reach the conclusion that the court did here. And Reynolds teaches that that kind of factual finding is really something that is best left to the trial court judge. I realize I'm about to run out of time. Do Your Honors have any questions about the nurse or anything else on forfeiture by wrongdoing? Well, as to the nurse, if the nurse issue was standing alone, i.e., if we found that there was no forfeiture, doesn't the confrontation clause exception require that this be an emergency? Not the rule, but the confrontation. Right. I understand, Your Honor. I don't think so, Your Honor. I think the case law recognizes that an emergency can be a very relevant factor, but it's — Is the confrontation clause exception for medical care? I thought the confrontation clause exception is for emergencies. I mean, this certainly sounded testimonial. There was a whole list, and they asked various questions and so on. So what's the exception for? So I would look at Michigan v. Bryant and Ohio v. Clark, which more recent cases in this area that recognize that unless the primary purpose of the discussion is to create a proxy for in-court testimony, the confrontation clause just doesn't apply at all. And footnote 9 of Bryant indicates that where the medical hearsay exception applies. It certainly seemed as if that was the primary purpose. I mean, she was told that they were going to use this for evidence, and they went through a long list of everything that happened. And in terms of a medical exam, they did — she did almost nothing. I mean, she looked at her body, but that was for the purpose of making a map for evidentiary reasons. And she didn't — she didn't — apparently, she didn't have her address. She didn't look at the test from the day before. She didn't do basically anything. Well, Your Honor, I would respectfully submit that the record shows that there was at least a very clear medical purpose to this as well. I'm not saying there wasn't a dual purpose here, but there was a very clear medical purpose. But for the confrontation clause purpose, that's why I'm trying to back out the federal rules of evidence. For confrontation clause purposes, there's no medical exception as such, right? Well, I think, though, that Bryant and Clark teach that those hearsay rules are still relevant to this analysis. And if the hearsay exception does apply, that's a strong indicator that it's not a testimonial, that this whole process wasn't done for the primary purpose of creating a proxy for in-court testimony. The cases in which medical exams have been held to be non-testimonial and were — in which there was an emergency. There's no emergency here at all, right? She went to the doctor for the emergency, and she had all these tests, and this was the next day. And there was no emergency. Well, you know, I think it's true she was not in the emergency room. But she did have this condition related to strangulation that could at any moment erupt into an emergent condition, something that she wasn't aware of, something — information and aftercare that she didn't get from that ER visit. And keep in mind, this visit occurred just 24 hours approximately after she called 911 and had been rushed to the emergency room. She was still very severely injured. She told Nurse Raubel, I'm still a little sore, and she had all this evidence of swelling and contusions and so forth throughout her body. She was still in pain and still in need of treatment. If she hadn't been in the emergency room the day before and this was the first examination, would it be one confronting an ongoing emergency? I think given — You have to say yes, because if you say no, then — Well, I — Your view is that — your view, I take it, is that this was an ongoing emergency because it was clearly an emergency the day before she went to the emergency room, and this is only 24 hours later and she's still suffering from the effects of the attack. She's still in distress. I mean, I don't think you need to call it an emergency in order for the confrontation clause to fall out here. I think all you have to show is that the primary — There is that statement in Latu, though. You think that's just describing the facts of the case and that the confrontation clause only requires the statements be made for medical care? Let's assume it's no emergency, OK? Yes. Let's just assume there is no emergency. Uh-huh. But she makes the statements for the purposes of receiving medical care. Yes, as long as — Yeah, that may or may not be the facts of this case. So is it your view that the confrontation clause doesn't apply under those circumstances, even though there's no ongoing emergency? Yes. Tell me why. That is my view. Because Bryant and Clark indicate that unless the primary purpose of the exercise is to create this proxy for — Right. And let's just assume for a second we're not looking at that, just looking at the question of whether an emergency is required. No, an emergency is not required. That is — it's a very relevant factor, but it is not necessarily a dispositive factor. And I think that's borne out by language in the Latu case and in other cases as well. And I think the real inquiry is, was this for the primary purpose of replacing in-court testimony? And I think here, because she was still in distress and because she did get bona fide medical help from this nurse rabble who is an employee of Honor Health, that there was a clear and urgent, really, medical purpose to what happened in her examination room. Mr. Kosnetson, unless my colleagues have additional questions. Well, thank you. Okay. Thank you, Your Honors. Ms. Moretti. Your Honor, with regard to the last point, it was clear that the primary purpose of the nurse rabble visit was not for medical reasons. In fact, a nurse rabble was a specialist in forensic nursing, of course, but she specifically wanted to — she testified she wanted to explain the legality of what's involved with strangulation to the victim. She also testified, though, that her primary purpose in doing the examination was to provide a recommendation for a course of care. So she's got inconsistent testimony. Why can't the judge buy part of it and not the other? It would be unreasonable because she did not exactly provide a treatment. Well, she did suggest how to follow up, what she should do next, right? Yes, she did, as to a particular contingent occurrence. But it was nurse rabble herself that elicited evidence of strangulation, which the victim had not mentioned. She had mentioned simply she was grabbed from behind and dragged a short distance. There was no objective evidence or documentary evidence to corroborate that. But it included — it really served to enhance the charges by — or the sentence to defendant by years. Well, she did test — I mean, if we allow the police statements in, there's plenty of evidence of strangulation there, isn't there? There's not. There's not? Not by the definition of strangulation, which requires that pressure be applied to impede circulation or if it was suffocation to some other defendant. And there was simply not. She was just briefly pulled into or toward the trailer and then said she would be willing to get up. I want to get back to this just for a second. I know we're over time. Your client was acquitted of strangulation. Yes, he was acquitted. Okay. And so let's assume that — and you've got a separate argument about why the enhancement shouldn't be appropriate. But even assuming that she inappropriately obtained evidence of strangulation, that didn't prejudice your client at trial because he was acquitted of that charge, right? The judge enhanced the sentence. I'm saying put aside the enhancement for a moment. Yes. Well, no, it would prejudice the defendant because it would serve to add to the cumulative evidence of — Well, the jury didn't believe it. Not specifically, but the jury heard details. So they heard that he dragged her, but they decided it wasn't strangulation. But the jury repeatedly heard endless renditions of what happened, and that automatically, well, presumably causes an emotional reaction, which totally evinces a need for the jury to punish the defendant. Well, if he didn't actually strangle her, he must have done something else, so we're going to find him guilty. But most likely here, as defendant ultimately allocated, he admitted committing an assault where he punched the victim. But as to the kidnapping, the unlawful restraint, and as to the enhanced injuries, substantial and serious bodily injury, that was not so clearly proven, particularly by the documentary evidence. If my colleagues have no further questions. Thank you, Ms. Moretti. Thank you, Your Honor. The case is submitted.
judges: BERZON, HURWITZ, JOHNSTONE